IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HUMBERTO GALVAN,

      Plaintiff,

v.                                        No. CIV 12-1026 MV/LFG

LEE VAUGHN,

      Defendant.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

    1.    On October 2, 2012, Plaintiff Humberto Galvan ("Galvan") filed a *pro se* "Motion Pursuant to 28 U.S.C. § 2241." [Doc. 1.] Galvan is presently incarcerated at CCA/CCCC in Milan, New Mexico.

    2.    Galvan's claims relate to a knee brace issued to him by the Bureau of Prisons. The knee brace was returned to prison authorities in a damaged state. Galvan was charged with damage to the device and violations of the disciplinary code related to damaging government property. After a disciplinary hearing was held, the disciplinary hearing officer ("DHO") found Galvan intentionally altered and damaged the knee brace requiring it to be replaced. Galvan was sanctioned, including

---

[1] **Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed.** *See, e.g.*, **Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).**

the loss of 27 days of good conduct time, 30 days of disciplinary segregation, 90 days of loss of commissary privileges, and monetary restitution for the damaged brace in the sum of $725.00.[2] [Docs. 1, 8.]

    3.    In his § 2241 petition, Galvan argues that the sanctions imposed on him were improper, that his staff representative did not adequately investigate the case, that he was not given proper documentation of the evidence against him, and that the restitution amount was not supported by sufficient evidence. [Doc. 1, at 4-9; Doc. 8, at 3.] Galvan seeks restoration of the good time credits, a refund of the monetary sanction, and expungement of the related disciplinary charge from his institutional records. [Doc. 1, at 1.]

    4.    Galvan states that he is not challenging the fact of his detention or his sentence. Instead, he challenges the forfeiture of good time credits and the monetary damages imposed on him as a result of the disciplinary proceeding. Thus, he contends he properly raised these claims in a 28 U.S.C. § 2241 petition.[3]

---

[2] The monetary damages were later reduced from $725.00 to $421.25. [Doc. 1, exhibits (invoice and 9/17/2012 memo).]

[3] The government argues that Galvan's requests for expungement of the disciplinary conviction from his institutional records and a refund of the cost of the knee brace and are not cognizable under § 2241. [Doc. 8, at 3.] *See* McIntosh v. United States Parole Comm'n, 115 F.3d 809, 811-12 (10th Cir. 1997) (in contrast with a habeas petition, a civil rights action ... attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions."). In addition, while there are cases indicating that § 1983 is the proper vehicle to bring a claim for expungement, there is also authority that such a claim may be brought in a habeas proceeding. *See, e.g.,* Buhl v. Hood, 81 F. App'x 273, 274 (10th Cir. Aug. 21, 2003) (unpublished) (citing cases allowing § 2241 attack for loss of good time credits and "other prison disciplinary matters" and noting that petitioner properly brought § 2241 petition to request expungement of disciplinary conviction from record). The Court elects to review all of Galvan's claims for relief asserted in the § 2241 petition. The claims for relief, including restitution of the knee brace costs and expungement of the disciplinary conviction all depend on the Court's recommendation and ruling as to whether Galvan received the process he was due in the disciplinary hearing. Stated differently, if the Court denies Galvan's claim that his due process rights were violated, there are no grounds to support expungement or restitution of the knee brace costs.

5.     On January 11, 2013, Defendant Lee Vaughn ("Defendant") filed a response to Galvan's § 2241 petition, arguing that Galvan's disciplinary hearing satisfied procedural due process, that his claims are without merit, and that he is not entitled to any of the relief he seeks. [Doc. 8, at pp. 4-7.]

6.     Galvan claims he exhausted administrative remedies and attached related exhibits. [Doc. 1, at 3, exhibits.] Defendant concedes that Galvan administratively appealed the disciplinary officer's decision and that the appeal was rejected. [Doc. 8, at 2-3.] The Court assumes that Galvan satisfied exhaustion requirements as Defendant did not argue otherwise.

7.     Because the government provided little evidence in relation to the disciplinary proceeding, the Court asked for a supplemental response, with pertinent exhibits. [Doc. 9.] On March 28, 2013, the government filed a supplemental response with additional exhibits. [Doc. 10.]

**Background**

8.     On September 29, 2011, a knee brace was purchased and issued to Galvan by the Department of Corrections. [Doc. 1, exhibit (DHO report); Doc. 10, exhibit (9/29/11 invoice).] On the incident report, dated July 5, 2012, Galvan was charged with violating disciplinary code number 218, "destroying, altering, or damaging government property having a value in excess of $100.00." [Doc. 10, exhibit (incident report).] The incident report indicated that Galvan returned from an offsite medical appointment at Hanger Prosthetics and Orthotics ("Hanger"), and that the provider there determined the knee brace Galvan was issued had been modified and altered, "compromising the fit. Three straps had to be replaced." The original cost of the brace was $871.89; the cost estimate to replace it was $725.00. [Id.]

9.     In response to the incident report, the prison committee referred the charge to the DHO for further hearing, based on the "level of charge." [Id.] The committee response to the

incident report describes Galvan's allegations that "medical" told him he no longer needed the old brace and was being sent to Albuquerque to be given a new brace. Galvan admitted that he forgot to bring the three straps for the old brace but claimed they were not damaged and had been removed for a shower. While Galvan said he still had the straps, he alleged that he was told the brace had to be replaced. He further asserted that the straps were made of velcro and were removable. The committee was unpersuaded by Galvan's arguments and recommended that he lose some "good conduct time credit" and be required to pay for the brace if found to have committed the prohibited act.

10.     The incident report further indicates that Galvan was read his rights, along with the contents of the report, in Spanish. Galvan stated he understood his rights and the report. He again claimed that the knee brace was not altered and that he simply forgot the straps at the facility because he was being rushed by the officers. [Id.]

11.     On July 11, 2012, Galvan signed a form confirming that he was advised of various rights that were afforded him at a hearing before the DHO, including the rights to have a full-time staff member represent him before the DHO, call witnesses and present documentary evidence, present his own statement or remain silent, be present throughout the discipline hearing, be advised of the DHO's decision and supporting facts, and appeal any adverse decision. [Doc. 10, Exhibit, (Inmates Right Form).] Galvan elected to have a staff representative present with him at the hearing and wished to present witnesses, including Nurse Practitioner June Kershner ("Kershner"), and

Senior Officer Jesse Vigil ("Vigil"),[4] who could testify that the three straps were not missing or damaged. [Id.]

12.    Galvan was given the DHO's report after the hearing was held on July 18, 2012. [Doc. 1, at 23; Doc. 10, DHO Report.] That report summarizes Galvan's statements at the hearing, as also described above, along with his contention that he made an appointment with Kershner to get a brace that worked properly. The report indicates that, at the hearing, Galvan showed the DHO that the brace pulled open sideways and the joints were loose. Galvan claimed he did not alter or damage the brace, that it never fit right, that one strap was too tight and one too loose, that he had worn the brace a lot over a period of 14 months, and that it wore out from wear and tear. [Doc. 1, at 23.]

13.    According to the DHO's report, Kershner provided testimony at the hearing that she talked to the brace provider at Hanger, and they told her the brace had been tampered with, straps were cut, and molded parts had to be cut down. Kershner related that these issues were documented on a medical chart[5] by the Hanger provider. She further stated that she was upset that Galvan did not report these problems to her because if he had, she would have referred him for a proper re-adjustment of the brace.

14.    At the hearing, Vigil pointed out that the brace was a manmade piece of equipment and was subject to wear and tear and might have been worn out because of a possible manufacturing defect. [Doc. 1, at 24.]

---

[4]In his § 2241 motion, Galvan states he was informed that Lt. Marquez, his Inmate Representative, was not going to appear at the DHO hearing, but that instead, his other assigned investigator, Sgt. Vigil, would be Galvan's inmate representative. [Doc. 1, at 4.]

[5]The medical chart was not included as an exhibit to these pleadings.

15. The DHO considered the testimony, Incident Report and investigation, original invoice from Hanger, dated September 29, 2011, in the amount of $871.89, knee orthosis for Galvan, and Hanger cost estimate of $725.00 for replacement of the knee orthosis.

16. The hearing was conducted in Spanish and translated by Vigil. The DHO reviewed Galvan's rights with him and concluded that Galvan committed the prohibited act of damaging government property. After reviewing all of the evidence, the DHO opined that the brace was not worn out due to natural wear and tear or possible manufacturing defects. While Galvan claimed to have had the brace for 14 months, it was purchased on September 29, 2011, indicating it was about nine months old at the time of the July 2012 hearing. The DHO was not persuaded by Galvan's or Vigil's testimony regarding the theory of possible wear and tear or defect. The DHO found more persuasive Kershner's testimony that the average life span of the brace was 5-7 years, and the Hanger practitioner's statements, as relayed by Kershner, that the brace straps were cut and the molded parts cut down. The DHO, therefore, concluded that Galvan altered the brace. Such actions by Galvan "probable [sic] compromised the structural integrity of the brace causing the brace to open too wide and joints to wear out early."

17. The DHO also did not find convincing Galvan's testimony that he forgot to take the straps to his appointment, and concluded it was more likely that Galvan intentionally left the straps because he "apparently had cut them off." The DHO further noted conflicting statements that Galvan made to the hearing officer and to the Unit Disciplinary Committee ("UDC"). For example, Galvan told the DHO that he went to medical because he wanted a brace that worked properly and because the old brace never fit right. However, in his statement to UDC, Galvan relayed that medical told him he did not need the old brace, that they were sending him to be fitted with a new one, and that Kershner told him he needed a new one. The DHO believed the reporting officer's

statement that was supported by Kershner's testimony. The DHO concluded that the damage was due to Galvan's intentional alteration to the brace. Sanctions assessed included 27 days loss of good conduct time; 30 days of disciplinary segregation; 90 days loss of commissary privileges; and monetary restitution in the amount of $725.00.[6] [Doc. 1, at 25.]

18.     Galvan was advised of his right to appeal, and on July 26, 2012, Galvan submitted an appeal. He argued that two weeks before the incident, he had an appointment with Kershner, when he explained that his brace was too big. According to Galvan, Kershner sent him to a chiropractor to replace the brace.[7] Galvan contended he took the whole brace with straps and that it was not damaged. In the appeal, Galvan stated he wanted to ask Kershner why she did not report that the brace was damaged, altered, or destroyed, when he was there for the appointment and she saw the brace . Galvan stated he wanted to "get evidence of the piece that the chiropractor fixed." [Doc. 1, at 18.] Galvan argued it was not fair that the DHO found him guilty and claimed the sanctions were "too much abuse for 3 straps."

19.     On July 27, 2012, an administrator responded to the appeal. The administrator reviewed all of Galvan's contentions concerning the brace and the disciplinary proceeding. She observed that the officer who was Galvan's witness never testified that he saw the straps Galvan left on his bed as Galvan claimed in his appeal, nor was the officer asked about it at the DHO hearing. The administrator determined that the evidence was sufficient to support the DHO's finding and that

---

[6]The restitution was to be made by placement of a freeze on Galvan's inmate account until the damages were paid. [Doc. 10, exhibit (7/20/12 Memo for Controller).] Thus, this § 2241 petition is not one that seeks a separate award of damages for alleged constitutional violations, like damage claims typically brought via a § 1983 complaint. Rather, Galvan simply wants a refund of a specific sum of money removed from his inmate account.

[7]No chiropractic medical records were produced by the parties.

the administrator found it reasonable for the DHO to have made his determination. The sanctions imposed were authorized. The administrator denied the appeal, noting that Galvan could appeal to the Office of General Counsel for the Federal Bureau of Prisons. [Doc. 1, at 21.] It is not clear if Galvan submitted an appeal to the Office of General Counsel.

20. On August 2, 2012, an email to the DHO from the Bureau of Prisons states the DHO's report was reviewed and found to have been in compliance with due process requirements, and that the recommended sanctions were in accordance with Bureau of Prisons Program Statement 5270.09, Inmate Discipline Program. [Doc. 10, at 20.]

21. There is an email, in late July 2012, between the DHO and someone named Dan, who asked about payment for the original brace and whether CCA's insurance company was going to cover the costs of the repair. The DHO responded that the insurance company paid for the original brace and that the medical records clerk believed the insurer would cover the cost of the replacement brace. The DHO then questioned in this email whether Galvan could still be charged with restitution in view of the fact that the insurance company was covering the cost. [Doc. 10, Ex. 21.] There is no answer documented in the exhibits. But, Galvan apparently was charged with the cost of the brace.

22. On September 10, 2012, Galvan requested a receipt for the charges for the brace. On September 17, 2012, the DHO reduced the amount of monetary restitution from $725.00 to $421.25. [Doc. 1, at 16.] This may have been the result of Galvan's request for a receipt or related to the email discussion about insurance coverage. The reason for the reduction is not clear from the records.

## **Analysis**

23. Galvan seeks restoration of his good time credits, a refund of the cost of the knee brace, and expungement of the disciplinary charges from his institutional records. [Doc. 1, at 1.]

Although unclear, he may additionally seek other relief related to the 90-day loss of commissary privileges and the alleged denial of participation in the institutional hobby shop. [Doc. 1, at 4.]

24. The Court recommends denial and dismissal of all Galvan's claims and requests for relief, based on the following reasons. To the extent that Galvan pursues relief related to the 90-day loss of commissary privileges and the alleged denial of participation in the institutional hobby shop, Galvan failed to allege the requisite constitutional due process deprivation necessary for federal habeas relief to be granted with respect to those claims. In other words, such claims or requests for relief do not raise allegations related to liberty interests protected by the Due Process Clause. *See, e.g.,* Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (challenge to disciplinary hearing must show punishment intrudes on a protected liberty interest "so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause . . . ."). *See also* Sandin v. Connor, 515 U.S. 472, 485-86 (1995) (loss of commissary and recreational privileges, along with segregated confinement, are not atypical, significant deprivations that encroach upon any liberty interest)

25. With respect to Galvan's request to recover his good time credit, the Court observes that "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted). It is also well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 1445 (internal quotation marks omitted).

26. In Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974), the United States Supreme Court explained:

> Although a prisoner's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." [] "[Prisoners] may not be deprived of life, liberty, or property without due process of law," but their due process rights are "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." "[T]he full panoply of rights due a defendant in [criminal] proceedings does not apply."

(citations omitted).

27. In Wolff, the Supreme Court further provided:

> Due process requires that an inmate receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

418 U.S. at 563–67. In addition, "the minimum requirements of procedural due process" demand that "the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985). The pertinent determination is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

28. Galvan received the process prescribed by Wolff. He had timely notice of the disciplinary action, an opportunity to call witnesses, and access to a staff representative, who appeared on his behalf at the hearing. He was invited to, and did, submit testimony. His testimony, along with that of other witnesses, is documented in the DHO's written report. The written report sets forth the evidence that the DHO considered and the basis for his findings. Indeed, Galvan concedes that the institution gave him advance written notice of the charges, he was allowed to call witnesses and present documentary evidence, and the DHO issued a written statement with respect to the existing charges made by Hanger, in the amount of $725.00. [Doc. 1, at 5.]

29.     Galvan's position is that the DHO committed fraud in charging Galvan for something "that has not yet occur [sic] and find him guilty of the disciplinary violation in violation of as not non existing invoice or proffer of evidence." [Doc. 1, at 5.] Galvan's argument is not entirely clear, but the Court construes the claim as one alleging that the DHO's decision and disciplinary sanctions were not properly supported by evidence.

30.     The Court observes that due process requires only that the decision of the hearing officer be supported by "some evidence." Hill, 472 U.S. at 454-55. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. "A disciplinary ... decision can be upheld by a reviewing court even if the evidence supporting the decision is meager." Howard v. United States Bureau of Prisons, 487 F.3d 808, 812 (10th Cir. 2007).

31.     The Court reviewed the findings of the DHO for "some evidence" and concludes that sufficient evidence supports the DHO's determination that Galvan intentionally damaged government property. The evidence includes the incident report, the reporting officer's statement, the Hanger invoice and estimate for replacement cost, testimony by Galvan, Kershner and Vigil, the actual knee brace, testimony on the age of the knee brace and its average life span, contradictions between Galvan's testimony with other testimony and evidence, and the DHO's written report. As noted above, the Court also concluded that Galvan received the minimum procedures appropriate under the circumstances and required by the due process clause. If the minimal safeguards are provided and there is "some evidence" to support the resolution of the disciplinary charge, the Due Process Clause's procedural requirements are satisfied. Hill, 472 U.S. at 454. *See also* Mitchell,

11

80 F.3d at 1445 (noting that the scope of a court's due process review of prison disciplinary proceeding is limited to determining if <u>Wolff</u> requirements were met and there is some evidence to support the decision).

32.     Moreover, the Court finds no evidence to support Galvan's argument that the DHO committed fraud in finding Galvan violated the prohibited act of destroying, altering, or damaging government property or property of another having a value in excess of $100.00. At the time of the disciplinary hearing, the DHO had documentary evidence that the original cost of the brace was $871.89 and that the estimated replacement cost was $725.00. [Doc. 10, DHO Report, at 2.] Thus, there was "some evidence" that the property damage exceeded the sum of $100.00, even if the that case was later reduced to $421.25. Moreover, the fact that insurance may have covered the cost to replace the knee brace does not absolve Galvan of the violation.[8] Ample evidence supported the DHO's conclusion that Galvan committed the violation.

33.     Thus, the Court concludes that there was nothing constitutionally deficient with respect to the disciplinary proceedings and findings, that the DHO's determination was supported by sufficient evidence, and that the removal of good time credits did not violate a constitutional right. Accordingly, it follows that Galvan's request for expungement of the disciplinary violation from his prison records and his request for reimbursement of the cost of the knee brace must fail because the Court found the disciplinary proceedings did not violate any of Galvan's constitutional rights.

---

[8]In addition, Galvan's argument that he contacted Hanger Prosthetics and was informed that Hanger never attempted to collect payment for the damaged knee brace because it still was under warranty [Doc. 1, Galvan Affidavit] is to no avail. Again, even if accurate, Hanger's decision whether or not to charge for the brace does not nullify the DHO's finding that Galvan intentionally damaged property that exceeded the value of $100 and violated prison rules or regulations.

34.     Galvan also argued that his staff representative was ineffective as the representative allegedly did not properly investigate the case. [Doc. 1, at 6-7.] For example, Galvan asserts that his staff representative failed to verify statements by Kershner and failed to contact Hanger to determine if the wear and tear from nine months daily use of the knee brace would cause it to "loose grip and also loose parts on its own."

35.     Galvan's claim of ineffective assistance of his staff representative fails. He is not constitutionally entitled to the aid of a staff representative. *See* Wolff, 418 U.S. at 570 (due process requires that inmates be provided with the aid of a staff member only where the inmate is illiterate or the issues are complex). Here, Galvan was provided representation at the disciplinary hearing, and his representative gave testimony that was potentially favorable for Galvan. The fact that his representative may not have done all that Galvan wanted does not arise to a constitutional violation or a violation of Galvan's due process rights.

36.     Galvan also argues that he should have been shown "all pieces [of the brace] that were replaced," provided corroboration that "all material evidence presented before the DHO was correct," and supplied with proof of the actual manufacturer charge. [Doc. 1, at 7-8.] To the extent that Galvan's assertions are construed as an alleged denial of the right to present evidence in his defense, the Court rejects the claim. First, as demonstrated by the DHO report, Galvan was permitted to present testimony and evidence at the hearing. Second, he did not request to present the above-described evidence at the hearing, nor were any such requests rejected. He now claims certain other pieces of evidence should have been prevented. However, an inmate cannot maintain a due process claim for failure to provide evidence or testimony unless he shows such evidence "would have affected the outcome of his case." Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006). Galvan fails to demonstrate how "all pieces" of the brace that were replaced or purported

corroboration of the material evidence before the DHO would have affected the outcome or aided his defense. Moreover, proof of the actual manufacturer charge for the brace was available at the time of the hearing and discussed in the DHO's report. To the extent there was error arising out of the alleged denial of Galvan's request to provide additional evidence, the error was harmless.

37. The same is true regarding any allegation by Galvan that his staff representative failed to present certain supporting testimony. Galvan did not show how any such alleged testimony would have aided his defense or affected the outcome of his case, based on the evidence before the DHO.

### **Recommendation**

Because Galvan failed to establish a violation of his federal due process rights in connection with the challenged prison disciplinary proceeding, the Court finds that he is not entitled to federal habeas corpus relief on any of his claims and related requests for relief. Therefore, the Court recommends denial of Galvan's § 2241 petition and dismissal of this matter and all claims, with prejudice.

The Court further determines that Galvan failed to make a substantial showing that he was denied a constitutional right. Thus, the Court additionally recommends, under Rule 1(b) and Rule 11 of the Rules Governing Section 2254 Cases, that Galvan be denied a certificate of appealability.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge